Before we start the talk today, I want to talk about the confidentiality markings in these briefs, which seem to be, in significant part, inappropriate because they're marking legal arguments as confidential. So if you look at the yellow brief, for example, at page 2, it says that it demonstrates that GE's methods perform trigonometric analysis, blah, blah, blah. And then it goes on and on. These legal arguments are marked as confidential. We've held that that's sanctionable conduct. Would you both please address the question of what to do about this? Your Honor, Charles Shields for Mr. Oleksy. We were only marking the information that GE claims is confidential, so we're not marking any Oleksy information confidential. Legal argument is not confidential. These briefs have marked extensive amounts of legal argument as confidential. And the way that this occurred is that we presented the brief to General Electric's counsel and asked them to inform us what they believed was confidential, and we just respected their request to mark those pages confidential. Mr. Ramey. Your Honor, we're not going to take the position legal arguments are confidential information, so perhaps there's been a disconnect between the parties on this issue. We can revisit that. Did you tell them to mark the legal argument as confidential? I don't believe I or anyone on our team did, but if that is what came out of this exchange of briefs, then that was not the intention. Well, why don't you consult with each other and each side file new briefs that deletes these confidentiality markings. There may be some material in here which could be appropriately marked confidential, but there's a lot of it which can't be. We're very happy to revisit that, Your Honor. And we'll give you two weeks from today to file revised briefs, both sides, deleting public versions that delete these confidentiality markings to the maximum extent possible, and delete all the confidentiality markings with respect to legal arguments. We'll do that, Your Honor. Counselor, but how are we to know here today what we can hear or address? Well, Your Honor, I think the principal issues that we're concerned about in the briefs have to do with the precise source code lines that are in the briefs. I don't know that anybody's going to be going into precise source code details. I don't envision any of the things I'm saying, and I'm not sure anything Counsel for Alexei is going to say, are going to create a problem in this hearing. Okay. All right. Mr. Schell. Good morning, Your Honor, and may it please the court. There are two main points I would like to make this morning and respectfully request just 30 seconds to lay them out for the court. The first is that the primary error requiring reversal of the district court is its insertion of the machine perspective limitation in the claims. And second is that Mr. Alexei should be permitted to bring his case to the jury under the doctrinal equivalence, even if the claim construction is not reversed. The district court precluded Mr. Alexei from relying on the doctrinal equivalence because it incorrectly found that the claims are limited to one specific programming instruction, the G02 instruction, and also because of nonexistent disclaimers of the G01 instruction. Turning to my first point, the subject claim language states said movement of said spinning form cutter being in a convex path. What that language requires is simple, movement of that cutter in a convex path. And the dispute between the parties and the crux of the court's claim construction error relates to the way movement is understood. We believe that the term movement in the patent is best described by looking at column two, lines 40 to the end of that column. There are only two instances in the claim language, or I'm sorry, in the specification where the word movement is used. Let me see if I can interrupt for just a minute. You're saying, as I understand it, that it's the workpiece coordinate that we should be focusing on, not the machine coordinate, correct? Correct, Your Honor. Okay, now the workpiece, as I understand it, is affixed to the table. That's correct. The rotating table. Yes. And therefore, if you look at the workpiece coordinate, you view the entire universe as if it's revolving around or moving around the workpiece, which stays fixed, correct? Well, the workpiece stays fixed. In the workpiece coordinate, right? Just as if you look at the coordinates from the machine, you would say the machine stays fixed and then all the parts move, right? Yes. Okay, so if the workpiece coordinate is the right way to look at this, then the table never moves, just as the workpiece never moves, right? I dispute that, Your Honor. Why? In other words, you would agree that in the workpiece coordinate, the workpiece doesn't move, right? I would not agree with that, Your Honor. All right. So, and the reason why is taught by figures 2 through 4 and 5. Well, help me with the basic here. If you have a machine coordinate, let's say, then the basic premise is the machine is not moving, right? And then you look at the relative motion of everything else. I'm not sure that's a correct description, Your Honor. I think the two coordinate systems, the way that the dimensions are used to tell the cutter where to precisely move, are based on where the fixed point is that you're giving the instructions from. In other words, if you're giving it in the machine coordinate system, you're telling the cutter to move at a point that's remote from where the zero point is located on the physical machine. Right, and the zero point stays fixed, right? The zero point stays fixed on the machine. And if you're talking about the workpiece coordinate, doesn't the zero point stay fixed on the workpiece? On the workpiece, but the workpiece doesn't stay fixed. It can translate along the axis of the rotary table, which, if you'll see from the figures, it's not shown as being attached to anything. But that means that it was done that way so that the drawings would apply to all configurations of CNC machines. But if the workpiece is moving, then aren't you out of the workpiece coordinate system by definition? No, no, because it just means that the dimensions that you're giving the instructions from for the cutter to make a cut are located on the workpiece. So when you look at the example in the patent in column three, the dimensions that are used in that example are in inches. And they're in the inches that the cutter has to move to make the convex path. If you'll notice, I think they're 1.7921. I understand that when you go to the patent, you see movement. But my impression is from the patent that that is really just showing us that the patent is actually written in machine coordinate and not in workpiece coordinate. And I'm not seeing why that's not true. Okay, because one, there is no discussion anywhere in the patent of a machine coordinate system. The fact that the example is given in the work coordinate system is shown because the dimensions given could only be relevant, or could only be accurate, if it's measured from the workpiece. You're telling the cutter to move 1.7921 inches in making this cut into the workpiece. And those dimensions, if it was in the machine coordinate system, would be 1.7921 inches plus whatever distance it is from the zero point on the machine, which would be feet away from the work table. Because the work table is on one of the axes, which is translating back and forth along an axis. And the cutter is on another arm or spindle, which is on another axis. And those two, I think this is what gave me the most problems in coming to grips with this invention, were just understanding how all of these movements could take place and how they were taught by figures one through four and five of the patent. But they are indeed. And remember, we're talking about a method of programming the CNC machine that uses trigonometric function to get to the accurate movements. So that once it's programmed in the G01 or G02 programming language, those are interpreted by the CNC machine to make the machine move in the way that it needs to move and to make that proper cut that has the convex path. And it's both the workpiece and the cutter that can be moving. And those drawings are not limited to any movement by any one of those parts. Even though the successive drawings two, three, and four show that the cutter travels through the root section, those drawings don't tell you whether the cutter is moving, whether the workpiece is moving, or whether they're both moving. So there's no limitations in the patent as to this way these movements take place. Let's assume for the moment that the district court got the claim construction right and turned to the doctrine of equivalence, and particularly to 48, 21, and 22, which is prosecution history relating to the Heman patent. You argue that this couldn't have been a disclaimer of G01, as I understand it, because Heman disclosed both G01 and G02. Am I correctly interpreting that? That's correct, Your Honor. But there is a whole line of cases, including Southwall being one of the leading cases, saying that the fact that you disclaim something when you didn't need to or you disclaim on a wrong ground, it's still a disclaimer and you're stuck with it. So how do you deal with that? I think I deal with that in that there was no disclaimer. I think what Alexei told the patent office was that the Heman patent could be distinguished based on the fact that this was machining within a metal block and Heman had nothing to do with machining within the interior of a metal block. That was the reason for the disclaimer. But you've got to stay with what you said to the patent office. There may have been other distinctions of Heman, but the whole line of cases I'm talking about says it doesn't make any difference that you have other good grounds for distinguishing a piece of prior art. You're stuck with what you said, so you're stuck with what you said here, and what you said seems to be that you said we're not G01. Well, what Alexei was saying, and I don't think there's any problem with this, is that they were teaching that both G1 doing it in linear fashion and G2 doing it with circular interpolation was both taught by the Heman. But what I'm suggesting to you is that doesn't make any difference, that you could have had a different distinction or that the distinction that you made wasn't a good distinction. That doesn't make any difference because the cases say, if you disclaimed, you're stuck with what you said, and what you said seems to be that you're disclaiming linear. I think that what was said was actually not a disclaimer in that it was an accurate description of what was taught by the Alexei patent that it could be used in both G01 and G02 programming, and so I don't see how that could be a disclaimer of the G02 or G01 program. I'm sorry if I'm not answering your question, Your Honor. I don't think we're communicating yet. Is it the question here whether the disclaimer was clear and unmistakable? I think that it could be the answer. I don't think there was any clear disclaimer. I think in order to have a clear disclaimer, you have to recognize that there isn't a teaching, say that there is not a teaching of that and have some contrary position in your patent. So it's certainly not clear and unmistakable in the way we argue the case. If I may proceed, Your Honor. Proceed. So I think in addition to the reasons I gave Judge Bryson earlier, the reason Alexei lost, I believe, on summary judgment was because the court limited the interpretation of the claim to the machine perspective, the machine coordinate system, by requiring the form cutter itself to physically move when the claim is not so limited. First, the claims are silent as to the coordinate system. Your argument is that Claim 1 refers to the movement only in a work coordinate system. No. Claim 1 can be done in either coordinate system, either the machine or the work coordinate system. The example given is in the work coordinate system. But if the court found only the machine coordinate system has to be used, I think that's talking about, in my mind, looking at the absolute movement of the cutter, whether it goes just back and forth, straight across, and doesn't look at the movement of the cutter and the workpiece combined to make the convex path. And the specification confirms that the preferred embodiment of the Alexei patent uses the work coordinate system because of those dimensions that I recited earlier, Your Honor. And we reproduced this at page 31 of our brief and plotted on page 32. And if you look at those plots, you'll see that the coordinate system is fixed on the workpiece. Because if this were in the machine coordinate system, as I mentioned earlier, it would be substantially further. Those dimensions would be substantially greater than working on the work coordinate system. So we think that this makes a significant difference in interpretation of the claim, that the court was wrong, our position is accurate, that the claim has to be able to encompass the work coordinate system within the interpretation of the claim, and it would not do so under the judge's interpretation. In either event, we think we're entitled to make our case under the doctrine of equivalence. You're under your rebuttal time. You want to save it? Okay, yes. We'll give you three minutes for rebuttal. Good morning, Your Honors, and may it please the Court. First and foremost, it's our view the district court here, in a very thorough and careful opinion, Let me ask you a couple of procedural questions before we start. First of all, is your one-on-one argument contingent on our rejecting the district court's claim construction? Yes, it is. So we don't have to reach that issue if we were to agree with the district court on the claim construction? That is correct, Your Honor. Okay, and what about the appealability of the shop rights issue? So, Your Honor, and the Court brought to our attention the Supreme Court decision in Plymouth. That case deals with a bare appeal of a denial of summary judgment. We don't have that here. We have a final judgment of non-infringement that the district court entered and actually clarified further by dismissing pending counterclaims of invalidity. So we have a final judgment, and under this Court's decision in Glaxo v. Tor Farm at 153 Fed Third 1366, that entitles us to be able to raise any other issue that the district court passed on but did not rule in our favor, which would include the shop rights issue, which we moved for summary judgment on but which was denied. Okay, why don't you go ahead. Thank you, Your Honor. Let me ask a second question on that, related to that. In your view, why is the shop rights issue raisable as a cross appeal as opposed to a ground in support of the judgment? Because you abandoned the counterclaim on shop rights, as I understand it, in your amended answer. Is that right? So my understanding is we never had a counterclaim based on shop rights. We had a counterclaim based on breach of contract. Right, but the breach of contract is tied up with the shop rights. In other words, you're saying you breached a contract which, in type, gave us rights. It is certainly closely aligned. We clearly maintained a defense of shop rights. Right, okay. That defense, that's fine, but when you abandoned the counterclaim, whether it carried with it the shop rights or not, you abandoned the right to a separate declaratory judgment in the final judgment on the assignment agreement slash shop rights issue, right? So why is that as a cross appeal? Let me break those two apart, Your Honor, if I might, and just address the cross appeal first. This Court has made clear that if we are seeking to enlarge our rights under a judgment, that is if this Court were to reach the shop rights issue, it would find GE is licensed under the patent in effect, which is a broader enlargement of rights versus a mere non-infringement. But because you haven't filed a counterclaim, the judgment that you would get would be a judgment merely of non-infringement because this is just a defense. It's a defense to infringement, right? Our interpretation of it is the judgment would say we don't infringe because we have a shop right. And certainly, from our perspective, a cross appeal was appropriate and necessary because this Court has said if we don't cross appeal, we're barred from raising those issues. So I will say whether it's treated as an affirmative ground for relief or as an independent cross appeal, to us procedurally, we wanted to make sure we preserved the issue, which is why we took a cross appeal from that issue. Well, preserve the issue. Suppose we were hypothetically to agree with you that there was no infringement here. We wouldn't reach the shop rights issue, right? So, Your Honor, we think we have a shop right here and should never face this again. Answer my question. Do we have to reach, in your view, do we have to reach the shop? I do not think so. Okay. Turning back to the merits, if I can just go to the convex path issue first. One point which Alexi does not address at all, I would submit in his briefs, is the issue, the first issue the district court resolved this on, and that is judicial estoppel. For eight years, this case was about specific movement of a form cutter. Before you get into the specifics of the arguments, can you help me on the issue that I was discussing with Mr. Schill, which is if my understanding, and Mr. Schill, I think, takes issue with my understanding, but I want to see if you do too, is that from the work piece perspective, that's the view of the world in which the work piece is the center of the universe and everything else is moving around it, as I understand that concept of the work piece perspective. In the machine perspective, the machine is the center of the universe and different pieces of the machine, some point on the machine is fixed and everything else is moving around. Is that your understanding of what work piece perspective means, such that in the work piece perspective, the work piece and the table to which it is affixed do not move? So no, that is not my understanding of their argument. No, no, is that your understanding of what it means to say the work piece perspective? No. Okay. So in this disclosure, the table has a rotary part that's moving. The work piece is affixed to the top of the rotary rotating part. That's right. So the work piece is moving relative to the table. But it's only moving, it seems to me, if you're looking at it from the machine perspective. From the perspective of the work piece, the rest of the universe is moving back and forth, is rotating. Is that not true? So I think I understand your point. So this is the train analogy. If I'm sitting on a moving train and I look at another train, I can't tell whether I'm moving, they're moving, or we're both moving. Here's the point, it seems to me. If it's true that the work piece perspective requires that the work piece, and therefore the table to which it is affixed, are not moving, everything else is moving, then that's inconsistent, it seems to me, with the language in the patent which says that the table rotates. Because in the work piece perspective, the table does not rotate. Is that not true? I completely agree with that. I thought you took issue with my characterization of the work piece perspective a moment ago. No. Well, I think the way you've explained it now, I understand. I think their work piece coordinate system reads out movement and simultaneously and a number of other limitations from the claim. So it really is the patent, it seems, is written in the machine perspective when it talks about the rotating table and the movement of the tool along a convex line, right? That is absolutely true, Your Honor. In fact, just to sort of simplify this, this patent is very clearly written from the perspective of you or I standing looking at this machine from the tailstock side, watching it move. All of the descriptions in this patent, the claims and everything else, are totally consistent with that. In fact, if you're honest, we'll look at the provisional patent application to which Mr. Oleksii claims priority. He actually tells us that. This is at page A3765. And he's repeating the same text from column four of his patent where he describes the movement from figures two, three, four, and five. In his provisional, he says, quote, By looking at drawings one, two, three, and B as in Baker, and one, two, three, and B as in Baker, I will tell you, are substantively identical to figures two, three, four, and five in the patent. We describe one cutting pass for machining the curvature on the hooks. The observer is looking from the tailstock side. What's that citation again? A3765. That is right out of the provisional patent application in the appendix. So this notion that somehow the preferred embodiment of this invention is written from the perspective of someone sitting on the workpiece is just absolutely not accurate. Mr. Oleksii tells us exactly where he's describing and how he's describing these movements. Somebody standing looking at this machine from the tailstock side. It's not really just the preferred embodiment, right? It's the claim language itself. Yeah, absolutely. And, in fact, this claim language was dropped in in the original prosecution by amendment in a massive amendment to the claims, which, you know, candidly claims exactly what he's describing. It is the preferred embodiment. That's what happened here during prosecution, Your Honor. So we completely agree. And, in fact, Mr. Oleksii describes this train analogy in his brief. And he makes the point you made very well that if you're sitting on train A, you don't know whether train A is moving, train B is moving, or both, or neither. The only perspective you're able to tell what's moving and so on is from the platform, which is the machine perspective. And these claims require not only movement of two different elements. They require movement of the cutting tool and also movement of the rotary table. But they require that movement to be simultaneous. The only perspective from which you could detect simultaneous movement is the perspective of standing on the platform. So the claims are very clearly directed to the machine coordinate system. Let me turn to the question of non-infringement. It seems pretty clear here under the district court's construction there's no literal infringement. It's undisputed that the accused cutters in the genie methods either don't move at all, which is, of course, one of the interesting points here, or move only in a single linear direction. If, in fact, this court affirms, I would submit, and this was argued below, there's been a complete failure of proof here on doctrinal equivalence. This was the primary no DOE argument we made in the summary judgment briefing. There is no function way result linking argument. Well, you may have made that argument below. I don't recall that that particular argument was made in your briefing here, was it? So at page 62 of our brief, Your Honor, we make the point that if the court affirms on literal infringement, this judgment has to be affirmed because there is no way to argue under any theory. Where do you argue the lack of evidence? Did you argue that? I don't recall. Well, we argue that once, again, at page 62 of our brief, what we say is if the court affirms on the claim construction issue, there can be no infringement as a matter of law. We make two alternative arguments. One is no infringement as a matter of law. The other argument is disclosure, dedication, disclaimer, which is the argument the district court went on and considered. I don't want to spend a lot of time on this, but if there ever were a vitiation case for a claim element here, there are two separate elements in this claim that must move, the workpiece and the cutter. And if the cutter has to move in a convex path, which we submit is absolutely plainly clear from these claims, and the table has to rotate, and that's how this invention works, they have to establish DOE on a limitation by limitation basis. A cutter that does not move, I would submit to you as a matter of law, cannot move in a convex path. Even though let's say that the G cutter moves on this very small lines. Yes, Your Honor. But at the end of the day, if it's still moving in a convex path, then don't you have a problem? So that's, well, we might if that were the way our machine operates. It's not. From the machine perspective where these claims need to be evaluated, it's undisputed that our cutter either is completely stationary or at most does this. Moves, and I'm just, my arm is literally staying straight as I can. That's all that's happening with respect to the limitation at issue we're talking about here, which is the- But if that movement, that very abrupt incremental movement that you are showing with your hand, if that results in a convex path, then don't you have a problem? But it can't result in a convex path because it's a straight line. You mean it can't result in a perfect convex path because it's going to be jagged? Well, it's going to be straight. Other things are moving around it. Right, but depending on the perspective we're looking at, you could have a system in which as it's going just like that, something else is moving, let's say, up, so that it's actually going like this and making a rough convex curve. I thought your argument was that even if that's regarded as being a generally convex curve, that it isn't convex in the way that the patent is claiming. For sure, and that is for sure accurate, and it's been disclaimed as the discussion about Hayman makes very clear. An approximation of a curve is not covered by these claims as the district court found, and it was disclaimed in prosecution over Hayman. So even if you were to say like a stair-step kind of an approach, I'm fundamentally at a step before that, which is this is not even an approximation of a convex curve. Now, it could result in a cut happening in the blade, but that cut, by the way, is concave, not convex. So even Alexei is mixing coordinate systems to try to make the argument that there's a convex path anywhere out there, because what's cut in the root section is concave, not convex. Remember, the supposed genius of this invention was a convex path of the form cutter resulting in a concave cut in the blade. That's the alleged genius of this invention, Your Honor. We don't have anything other than what they can point to as an end result of a cut in the blade. So I would submit under that theory, and I'm happy to address the disclaimer point, Your Honor, but I think it's absolutely clear, and the district court got it spot on here. Her analysis is excellent on this point, and I don't know that I could say it any better, so I simply would point to her analysis. It is absolutely spot on about short, straight lines, and if you compare the short, straight lines with what they describe as a different way in the specification of doing it, they match up very nicely. So I'm not sure much needs to be said about that. As I pointed out before, if the court agrees with us on the claim construction, it need not reach the Section 101 issue. It need not reach the shopper at issue. Our issue on the Section 101 argument is simply that if you accept their argument, these movement limitations have no meaning, and this is a pure claim to programmed instructions of the kind the court has rejected in Benson and cases like that. You make the argument in your brief, I think, that the shop right, at least under Illinois law, is indefeasible. Yes. And you take that language and suggest that the company that owns the shop right somehow cannot give it away. That strikes me as really strange. I mean, if Mr. Oleksii came to GE and said, I'll pay you $500,000 to waive your shop right, are you saying that GE would be unable to waive its shop right? So the indefeasible term comes straight from the set of circuits. I know, but what struck me is what they're really saying is it's indefeasible in the sense that the employee can't come back later and say, oh, well, I had my fingers crossed, not that the company is unable to waive it. You're not arguing that, are you? So, you know, it's interesting. We talked about this very issue a few days ago, and I completely agree with you that if GE wanted to waive a shop right, it could conceivably waive a shop right. But then the only question is whether it has waived it. Well, so I would argue that if the case law says it's indefeasible, at a bare minimum that waiver has to be beyond any reasonable dispute. Indefeasible means clear. Absolutely clear. I mean, I don't know how to square that. Indefeasible means it's unwaivable. I mean, that's absolutely what the Seventh Circuit has held here. But there is no way to look at this factual record and find that GE has waived its right to a shop right in this case. We paid for this invention to be made on our time, using our machinery. And we've been litigating this case for 10 years over an invention that was made using our time. We paid for it. Mr. Rennie, I think we're out of time. Thank you, Your Honor. Mr. Schill. Thank you, Your Honor. I just want to make clear that the claims are not limited to either coordinate system. We could prevail under either coordinate system if we had to. We think it's easier if the court recognizes correctly, as we argue. In addition, to follow up on one point that was just made. The clock should be reset. He had three minutes, not one. Three minutes? Thank you, Your Honor. Indefeasible, as we were just discussing, we think applies to the person, not to the company. So it's indefeasible to the inventor. I'd like to describe sort of the G01 and G02 programming for a moment, if we could. Those are instructions that are given to the CNC machine in two different manners. The G01, the programmer actually goes in and points, makes a point of one, two, three, four, as many numbers of points as he feels is necessary to achieve the accuracy of the cut they need. And then each one of those points is programmed into the machine. The G02, the end points are programmed into the machine, and the arc is programmed. And the machine itself will decide how many points it needs to move the cutter to achieve the accuracy that's called for. So they're both alternate methods. G02 is more precise. Excuse me? G02 is more precise. Not necessarily, Your Honor. They should both be the same precision, as long as you program in the necessary number of points on the G01 curve. And that's what we tried to show in our figure six in our blue brief, is they start off, one starts off with a connected arc. The other one starts off with a series of points. But the machine, you know, and these are directions you're giving the machine. The machine chooses how to move the cutter, move the other parts of the machine to achieve that cut. In the sample that I gave you, the exhibit, you'll notice that the convex curve is very hard to see, but it's on the top surface of the hooks. There's a very slight concave path on the top of those hooks made by the convex curve that was invented by Mr. Alexey of this machine. And the one thing about this system is it was invented before this there was no way to do this. The whole industry has adopted this mechanism of doing this invention to make these cuts in rotor root sections. And so if the whole industry has adopted, including GE, we believe that there's some significant invention in this that was made by Mr. Alexey. And we respectfully ask the Court to grant us the relief we requested in our concluding paragraph. Any further questions? So that I can understand the technology here better. Suppose this is the workpiece and it's moving back and forth, rotating back and forth and forth. The workpiece would not move in that manner because it would be fixed to the rotary table. It's fixed to the rotary table, but the rotary table is rotating like that, right? Well, it depends on what coordinate we're in, but I think of the rotary table rotating in this direction. Well, OK, but you can have it either this way or that way. But let's suppose we have it this way, set up this way. So in the machine coordinate, and per the language in the patent, which says that the table rotates, then this would be the table rotating as dictated by the patent, right? Certainly. All right. So the workpiece is going back and forth while the cutter is describing this convex curve, as I understand it, as this is coming along here, which results in a convex cut, correct? No. The surface it's machining actually turns out to be concave. Did I say convex? I meant concave. I'm sorry. Yes, a concave cut. Yes. Now, suppose the cutter were going in a perfectly straight line as this device is rotating. Would that not result still in a concave cut, but a deeper concave cut? No, Your Honor. What would it result in? I mean, you say no, so I assume you have some sense of what it would result in in order to be able to say it wouldn't be a deeper cut. I think the one thing that I think needs to be remembered in this, the invention really, the cutter actually follows the turning workpiece. So instead of the two pieces coming toward each other, the cutter and the workpiece coming toward each other, the workpiece is rotating away from the cutter, the cutter is following the workpiece, and the cut is made by going into one side of the workpiece and coming out the other. Okay. And that was sort of the way this is made possible, because that's not a usual way that these CNC machines used to make their part. Oh, okay. But I don't see the cutter, if it's going straight across. Then what shape, what's the difference in the shape of the cut if the cutter is moving, not in a convex path, but in a straight path? In a straight path. What different cut is made in that situation? I would only be guessing, Your Honor. I don't know the answer to that question. Okay. So you don't- But I think it's not- You're not sure that it's not what I was saying, which is a deeper concave cut. No. Can I control with my coat? Yes. Okay. Yeah, and I think he reminded me, I mentioned that chasing movement, because the reason for doing that was because the cutter can interfere with the interior surfaces that you're cutting. So I think if you're going straight in, it's going to interfere more, so you're not going to wind up getting any kind of recognizable cut. There's just going to be a binding up of the cutter with the metal block. Okay. Thank you, Your Honor. Thank you. We didn't have much on the cross- Nothing further from us, Your Honor. Mr. Porter, any questions? Okay. Thank you. Thank both counsel. The case is submitted.